## HURLEY v. N. J. REILLY CO.

(District Court, D. Massachusetts. May 6, 1926.)

No. 2491.

1. Bankruptcy ⬥⇒166(4)—Assignment of overdue accounts to cover unpaid trade acceptance held insufficient of itself to warrant holding that assignee had reasonable cause to believe that it was receiving preference (Bankruptcy Act, § 60a [Comp. St. § 9644]).

Assignment of overdue accounts to cover trade acceptance, which had not been paid, was not, standing alone, sufficient to warrant holding that assignee had reasonable cause to believe that it was receiving preference, within Bankruptcy Act, § 60a (Comp. St. § 9644).

2. Bankruptcy ⬥⇒166(4).

Even though bankrupt's inability to pay account excited suspicion, that of itself would not be sufficient to constitute reasonable cause to believe preference was being received by assignment of accounts.

3. Bankruptcy ⬥⇒166(4)—On issue of reasonable cause to believe preference is intended, creditor receiving assignments of account need not as matter of law conclude that debtor is insolvent, especially if other information justifies belief in solvency.

It cannot be said as matter of law, as respects voidability of preference, that creditor

receiving assignment of accounts as payment or security must as reasonably prudent business man be led to conclusion that debtor making assignments is insolvent, especially if other information justifies creditor in belief of solvency.

**4. Bankruptcy ⟺166(4)—Creditor, taking assignment of accounts from bankrupt, held not to have had reasonable cause to believe that they would operate as preference (Bankruptcy Act, § 60b [Comp. St. § 9644]).**

Creditor, having taken assignment of accounts in payment from bankrupt, *held* not to have had reasonable cause to believe that they would operate as preference under Bankruptcy Act, § 60b (Comp. St. §§ 9644).

In Equity. Bill by H. Francis Hurley, trustee in bankruptcy of the Northeastern Shoe Company, against the N. J. Reilly Company. Bill dismissed.

Harry Talty, of Boston, Mass., for plaintiff.

Daniel J. Lyne, of Boston, Mass., for defendant.

BREWSTER, District Judge. This is a proceeding in equity, brought by a trustee in bankruptcy of the Northeastern Shoe Company to recover a preference voidable under section 60b of the Bankruptcy Act (Comp. St. § 9644). The material facts as established by the evidence are as follows:

The bankrupt was engaged in the business of manufacturing shoes. The defendant was a merchant selling leather which entered into the manufacture of shoes. The defendant began doing business with the bankrupt in June, 1924. For the leather first purchased the bankrupt made a partial payment by check in July, 1924. Other sales were made during July and August, the last sale being made on September 19, 1924. The terms of the sale were 5 per cent. 14 days, 4 per cent. 30 days, but the defendant did not regard the account as overdue until after the expiration of 60 days from date of invoice. On September 3, 1924, the bankrupt gave a trade acceptance for the amount then due, amounting to $947.99. This trade acceptance became due September 27, 1924, and was not paid. Later certain accounts receivable were assigned by the bankrupt to the defendant, either as payment or security for the indebtedness owed the defendant, which then amounted to $2,085.00. The first assignment was made on or about October 1, 1924. Between that date and October 24, 1924, the bankrupt assigned accounts receivable aggregating in amount $1,889.06. An involuntary petition in bankruptcy was filed November 10, 1924, upon which the Northeastern Shoe Company was adjudicated bankrupt November 24, 1924. I find that at all times between October 1 and October 24, 1924, the period covered by the assignments, the bankrupt was insolvent, and the officers of the company knew, or ought to have known, of such insolvency and that the assignments operated as a preference under section 60a of the Bankruptcy Act. Whether the preference is voidable under section 60b of the Bankruptcy Act is the question presented for consideration.

As bearing upon this question, the evidence shows that before any sales were made the defendant looked up the credit worth of the bankrupt in a reputable trade journal and found that the bankrupt was entitled to a reasonable amount of credit. When the trade acceptance was not met, the bookkeeper for the defendant called that fact to the attention of Mr. Reilly, the president and treasurer of the defendant, and, as a result of a telephone conversation with him, the treasurer of the bankrupt agreed to assign the accounts. On September 29 the defendant wrote the plaintiff regarding the unpaid trade acceptance, and on October 1, 1924, received a reply in which the bankrupt stated that they were sorry the trade acceptance had not been met at the bank, but they did not wish to have the defendant become alarmed, as they fully intended to keep their agreement, and in the letter it was suggested that Mr. Reilly come over to the factory on October 6, when they would go over the matter and arrange to settle the account, and also discuss additional orders. On October 2 the defendant wrote the bankrupt that Mr. Reilly would be at their factory Monday morning, as requested, and concludes the letter with this significant paragraph:

"We are offering some big values in black kid, and we trust you will be in a position to avail yourself of some of our values."

Mr. Reilly went to the bankrupt's place of business on October 6, 1924, and looked the plant over; was told by the treasurer of the company that they had a lot of unfilled orders on the books from reputable concerns, and that the outlook for the future was good, if additional working capital could be obtained. Mr. Reilly intimated that he might put some money into the corporation, or at least assist it in obtaining additional capital. No statement as to the financial condition of the company was then forthcoming, but about the 16th day of October the bankrupt's treasurer went to the office of the defendant and presented an approximate statement of the assets and liabilities, which showed a margin

of assets over liabilities. Mr. Reilly, with the approval of the bankrupt, arranged with an auditor to investigate the affairs of the bankrupt. The auditor took an inventory, examined the books, and found a condition of insolvency, which he reported to Mr. Reilly, who first saw the report some time subsequent to October 24, 1924.

[1] The real question involved in this case is whether on the facts the defendant had reasonable cause to believe that the assignments would amount to a preference. The fact that the accounts were overdue, and that the trade acceptance had not been paid, would not, standing alone, be sufficient to warrant the court in holding that the defendant had reasonable cause to believe that it was receiving a preference. Voorheis v. National Shawmut Bank, 218 Mass. 69, 105 N. E. 382; McLaughlin v. Fisk Rubber Co. (D. C.) 288 F. 72. But the real question here is whether that fact, coupled with the fact that assignments of accounts were offered and accepted as the only available means of payment, would be sufficient to put a reasonably prudent man upon inquiry.

[2, 3] It is clear, from representations made by the bankrupt and the conduct of the officers of the defendant, that these officers did actually believe that the bankrupt had a good prospect for the future. They had no reason to suspect that the bankrupt's inability to pay was due to any other cause than its failure to collect outstanding accounts receivable, which, so far as defendant knew, were against customers of good financial standing. There is nothing in the conduct of the defendant to indicate that any distrust respecting the solvency of the bankrupt was entertained. It does not even appear that it entertained a suspicion, but, if the facts excited suspicion, that would not have been sufficient. Collier on Bankruptcy (13th Ed.) p. 1304, and cases cited. It cannot be said as a matter of law that a creditor, who receives in payment or as security assignments of account, must, as a reasonably prudent business man, be led to the conclusion that the debtor making the assignments is insolvent, especially if other facts and information known to the creditor justify an honest belief in the solvency of the debtor. Assignments of account are becoming more and more common in the commercial world as a means of obtaining working capital, and the modern conception of the practice does not necessarily imply an insolvent condition, or that the other creditors of the debtor of the same class will receive a smaller percentage of their debts. See Mat-

ter of Robert Jenkins Corporation (D. C.) 7 Am. Bankr. Rep. (N. S.) 504, 11 F.(2d) 979.

[4] I have reached the conclusion, therefore, that when the assignments were made the defendant did not know, and had no reasonable cause to believe, that they would operate as a preference. The plaintiff, therefore, is not entitled to avoid the preference, and cannot prevail in this suit.

The bill may be dismissed, without costs.